UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Pamela Leigh Muma,

    Plaintiff,

v.                                        Case No. 19-11280

Commissioner of Social Security,        Sean F. Cox
                                                  United States District Court Judge

    Defendant.
_____/

## AMENDED OPINION & ORDER

Plaintiff Pamela Leigh Muma ("Plaintiff" or "Muma") applied for, and was denied, Disability Insurance Benefits. Plaintiff then went before an administrative law judge ("ALJ"), who also issued an unfavorable determination. After the Appeals Counsel granted her request for review, its unfavorable decision, denying the application on an alternative basis, became the final decision of the Commissioner of the Social Security Administration. Plaintiff now seeks judicial review of the Commissioner's final decision, arguing that the denial is not supported by substantial evidence where: 1) Plaintiff was found capable of performing light work, despite also finding that she could only stand or walk for four hours in an eight hour workday; and 2) the residual functional capacity does not adequately account for Plaintiff's severe mental impairments. As explained below, the Court concludes that the residual functional capacity assessment of Plaintiff contained inherent contradictions and incongruities, such that remand for further proceedings is warranted.

## PROCEDURAL HISTORY

**A.     Proceedings In This Court**

In this action, Muma challenges the final unfavorable decision of her October 2015 application for Disability Insurance Benefits.

On May 2, 2020, this action was referred to Magistrate Judge Elizabeth Stafford for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Thereafter, the magistrate judge issued a Scheduling and Citations Format Order (ECF No. 8) wherein she provided that Muma would file a summary judgment motion, that the Commissioner would then file a response to that motion combined with a cross-motion for summary judgment, and then Muma would file a reply brief. (ECF No. 8). Those motions and briefs have since been filed.

On August 7, 2020, this Court vacated the order of reference to the magistrate judge. (ECF No. 19). The case is ripe for a decision by this Court.

**B.     Administrative Proceedings**

Prior to her October 2015 application, Muma had been found not disabled by an ALJ in a decision dated December 6, 2013. (*See* ECF No. 7-3 at PageID.61).

Muma filed for Title III Disability Insurance Benefits on October 14, 2015, alleging a disability onset date of December 7, 2013. (ECF No. 7-5 at PageID.192). Her initial application was denied and she requested a hearing before an ALJ.

On November 9, 2017, ALJ Christopher J. Mattia held a hearing in Mount Pleasant, Michigan. (ECF No. 7-2 at PageID.39). Muma, who was represented by counsel, appeared and testified at that hearing. Vocational Expert ("VE") Judith Katheryn Findora also appeared and

testified.

ALJ Mattia issued an unfavorable decision on February 6, 2018. (ECF No. 7-3 at PageID.99-116). The ALJ's decision followed the five-step evaluation process for determining whether a claimant is disabled. The ALJ determined that claimant met steps one through three. The ALJ's found that Muma had the following residual functional capacity ("RFC"):

> 5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could lift or carry ten pounds frequently and 20 pounds occasionally. She could stand or walk for four hours in an eight-hour workday. She could sit for six hours in an eight-hour work day, with an option to alternate between sitting and standing after 30 minutes. The claimant could push or pull within the aforementioned weight restrictions but only frequently with the right lower extremity. She could occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl. The claimant could never climb ladders, ropes, or scaffolds. She could never have exposure to cold, wetness, vibration, unprotected heights, or moving mechanical parts. She could carry out simple instructions.

(*Id*. at PageID.106). The ALJ found that Muma could perform her past relevant work as a finisher as it was generally performed and concluded that she is not disabled. (*Id*. at PageID.110).

Muma appealed the ALJ's decision to the Appeals Council ("AC") and the AC granted her request for review.

The AC issued an unfavorable decision on March 2, 2019. (ECF No. 7-2 at PageID.24-31). This AC decision is the final decision of the Commissioner of Social Security that is being challenged in this action, filed on May 2, 2019.

At the time of the alleged onset of Muma's disability (December 7, 2013), she was almost fifty years old. She was fifty-one years old, and thus "closely approaching advanced age"

at the time of her "date last insured" for Title II benefits on December 31, 2015. Muma has the equivalent of a high school education and had past relevant unskilled work experience as a finisher.

The AC agreed with the ALJ's "findings under steps 1, 2 and 3 of the sequential evaluation; namely, that the claimant has not engaged in substantial gainful activity since December 7, 2013 and that the claimant has severe impairments which do not meet or equal in severity an impairment in the Listing of Impairments." (ECF No. 7-2 at PageID.27). Muma has the following severe impairments: degenerative disc disease of the lumbar spine status-post lumber fusion, major depression, and social anxiety disorder.

The AO agreed with the ALJ's conclusions regarding the effects of Muma's mental impairment on her functional abilities:

> The Appeals counsel further considered the effects of the claimant's mental impairment on her functional abilities. The Council adopts the [ALJ's] conclusions regarding the degree to which the claimant's mental impairment restricts the ability to understand, remember, or apply information; presents difficulties in interacting with others; results in deficiencies in concentration, persistence or maintaining pace; and limits the ability to adapt or manage oneself.

(*Id*. at PageID.28).

The AO further affirmed the ALJ's "finding that the claimant retains the residual functional capacity to perform a reduced range of light work with the additional restriction to stand or walk for four hours in an eight-hour workday, with an option to alternate between siting and standing after 30 minutes, as well as additional push or pull, manipulative, postural, environmental, and mental restrictions (Finding 5)." (*Id*. at PageID.28).

However, the AC did "not agree with the A[LJ]'s finding that the claimant can perform her past relevant work as a finisher." (*Id*.).

4

But the AO agreed with, and adopted, an alternative step five finding and concluded Muma is not disabled – as "An individual with these vocational factors and with the residual functional capacity to perform a reduced range of the light exertional level is found to be not disabled within the framework of Rules 202.20 and 202.13, Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2, inasmuch as there are a significant number of jobs in the national economy which she could perform."  (*Id.* at PageID.29).

## STANDARD OF REVIEW

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quotations omitted); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...."). Under this standard, "substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

"Although the substantial evidence standard is deferential, it is not trivial." *Kuzava v. Comm'r of Soc. Sec.*, 2020 WL 814400 at *3 (E.D. Mich. Jan. 24, 2020), *report and*

*recommendation adopted*, *Kuzava v. Berryhill*, 2020 WL 806192 (E.D. Mich. Feb. 18, 2020). The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651. (quotations omitted).

## DISCUSSION

The Social Security Act provides disability insurance benefits to those who cannot perform their prior job or engage in other "substantial gainful work." 42 U.S.C. § 1382c(a)(3)(B).

In evaluating whether a claimant is disabled, the Commissioner conducts a five-step sequential analysis to determine if a claimant is disabled within the meaning of the Social Security Act:

> (I) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

>  (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
>  (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant has the burden of proof at steps one through four. *Longworth v. Commissioner of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005). The burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he [or she] retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Svs.*, 735 F.2d 962, 964 (6th Cir. 1984). To prevail at step five, the Commissioner must identify jobs in the economy that accommodate the claimant's RFC, taking into account vocational factors such as age, education, and skills. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At that fifth step, the "administrative law judge gauges a claimant's 'residual functional capacity' – the work, in other words, an individual still can do. 20 C.F.R. § 404.1545." *Blackburn v. Commissioner of Soc. Sec.*, 748 F. App'x 45, 47 (6th Cir. 2018). "If an individual cannot do her prior job, the administrative law judge considers whether she can do (1) sedentary, (2) light, or (3) medium work." *Id.* "The administrative law judge takes this information and plugs it into a grid that accounts for other factors – age, education, and previous work experience – and that determines whether the claimant may be able to handle substantial gainful work." *Blackburn, supra.* "But not all individuals fall into single categories." *Id.*

7

Here, the Commissioner's final decision is challenged by Muma in two respects that both relate to her RFC. Muma argues that the Commissioner's denial is not supported by substantial evidence where: 1) the RFC does not adequately account for Plaintiff's severe mental impairments; and 2) Plaintiff was found to be capable of performing light work, despite also finding that she could only stand or walk for four hours in an eight hour workday.

### A. Residual Functional Capacity Not Adequately Accounting For Severe Mental Impairments

Muma was found to have the severe mental impairments of major depressive disorder and social anxiety disorder. (ECF No. 7-2 at PageID.29). The RFC finding includes the corresponding mental limitation that Muma could only "carry out simple instructions." (*Id.* at PageID.30).

Muma asserts that the hypothetical question did not account for the moderate limitations Muma was found to have in concentration, persistence and pace. (Pl.'s Br. at 21). Muma notes that the ALJ found that she had "moderate limitations in concentration, persistence and pace when analyzing whether her impairments satisfied the 'B criteria' of Listings 12.04 or 12.06 for mental impairments," and faults the ALJ for not including those same limitations in his RFC finding. (Pl.'s Br. at 19-21).

As the Commissioner notes, however, the Sixth Circuit has recognized that a moderate limitation in concentration does not compel a particular RFC limitation. *See, e.g., Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) (Explaining that the Sixth Circuit's case law "does not support a rule that a hypothetical providing for simple, unskilled work is per se insufficient to convey moderate limitations in concentration, persistence and pace."); *see also Berg v. Comm'r of Soc. Sec.*, 2014 WL 4855337 at *9-10 (E.D. Mich. Sept. 30, 2014); *Sherman*

8

*v. Comm'r of Soc. Sec.*, 2020 WL 1880789 at *4 n.3 (E.D. Mich. March 11, 2020). Rather, as with other aspects of an ALJ's decision, the question is simply whether the particular RFC limitation in question is supported by substantial evidence in the record. *Id.*

Here, the ALJ partially relied on Dr. Douglass's opinion that, despite a moderate limitation in concentration, persistence or pace, Muma could perform unskilled work on a sustained basis. (*See* ECF NO. 7-3 at PageID.95 & 109). Courts within this district have affirmed mental RFC findings in this situation and the Court concludes the ALJ did not err in this regard.

Muma also faults the ALJ for only giving limited weight to the opinions of the consultative examiner, Dr. George Prestue, and the non-examining psychologist at the State agency, Dr. Bruce Douglass. (Pl.'s Br. at 17). Muma describes, as her bottom line on this issue, that ALJ improperly "rejected the only two medical opinions of record, – both of which opined that Muma would have greater mental limitations than the ALJ found – in favor of his own medical judgment regarding Muma's ability to interact with others." (Pl.'s Reply at 4).

Muma notes that "Dr. Prestue opined that Muma's social anxiety would make it difficult for her to work in a social setting, and that her depression made her tired and lacking in motivation." (Pl.'s Br. at 17). As Muma notes, however, the ALJ addressed that opinion, stating that he was giving that opinion little weight because, among other things, the opinion was "vague and *does not set forth any actual functional limitations*." (ECF No. 7-3 at PageID.110) (emphasis added).

Muma further claims that, even if Dr. Prestue's limitations were vague, Dr. Douglas opined that Muma would not work well with the public and would work best alone or in small,

9

familiar groups. (Pl.'s. Br. at 18) (citing ECF No. 7-3 at PageID.95). The portion of Dr. Douglas's assessment cited by Muma, however, pertains to a narrative explaining limitations on social interaction capabilities, that Dr. Douglas opined were "Not significantly limited." (*Id*.).

Accordingly, the Court finds that Muma has failed to meet her burden of demonstrating the need for a more restrictive RFC as to her mental impairments and this Court finds these assertions of error without merit.

### B. Capable Of Performing Light Work Despite Stand/Walk Limitation

Muma's motion notes that she was fifty-one years old at the time of her DLI and that her age category has changed since the prior decision in 2013. "For this reason, the issue of whether or not she could have performed light work is a critical one, since a finding that she could only perform sedentary, unskilled work – as opposed to light – would have resulted in a disability finding under the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, specially, Medical-Vocational Rule 201.12." (Pl.'s Br. at 12).

The Commissioner's final decision was based upon an RFC finding that Muma "had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could lift or carry ten pounds frequently and 20 pounds occasionally. She could stand or walk for four hours in an eight-hour workday. She could sit for six hours in an eight-hour workday, with an option to alternate between sitting and standing after 30 minutes." (ECF No. 7-2 at PageID.30).

Muma argues that Commissioner's denial is not supported by substantial evidence where she was found to be capable of performing light work, despite only being able to stand or walk for four hours out of an eight-hour work day. There are two aspects of this challenge.

First, Muma argues that the limitation of standing and walking for only four hours a day, in addition to the need to alternate positions every thirty minutes throughout the day, means that her capacity for the full range of light work was significantly reduced, thereby supporting a disability finding under SSR 83-12 and Medical-Vocational Rules.

In support of this argument, Muma notes that the "full range of light work typically requires the ability stand or walk for about six hours per pay. SSR 83-10, 1983 WL 31251, at *5-6; 20 C.F.R. §§ 404.1567(b), 417.967(b)." (Pl.'s Br. at 12). Muma further notes that even the "VE testified that the jobs she listed in response to the ALJ's hypothetical were at the 'lower end' of the light exertional range." (Pl.'s Br. at 12) (citing ECF No. 7-2 at PageID.55). Muma asserts:

> SSA policy provides guidance for applying the Medical-Vocational Guidelines in situations where the RFC finding falls between two exertional levels. Social Security Ruling (SSR) 83-12, 1983 WL 31253, at *1 (Jan. 1, 1983). When the Medical-Vocational Guidelines direct opposite disability findings, the ALJ must consider whether the claimant is slightly or significantly reduced in his or her ability to perform work at the higher exertional level. *Ford v. Colvin*, No. 1:14-CV-01046-RGC, 2015 WL 4608136, at *7 (D. Del. July 31, 2015), citing SSR 83-12 and OMS DI 25025.015. If the claimant's capacity to perform work at the higher exertional level is significantly reduced, "it would indicate little more than the occupational base for the lower rule and would justify a finding of "disabled." SSR 83.12.

(*Id*. at 12-13).

Muma contends that the case law "in this district suggest that Muma's RFC reflected a significant reduction in her ability to perform light work." (Pl.'s Br. at 13). Muma relies on *Cohoon v. Comm'r of Soc. Sec.*, 2019 WL 2051965 (E.D. Mich. 2019).[1]

---

[1] That Report and Recommendation by Magistrate Judge R. Steven Whalen was adopted by Judge Laurie Michelson, over the objection of the Commissioner. *See Cohoon v. Comm'r of Soc. Sec.*, 2019 WL 1274820 (E.D. Mich. 2019).

In that case, the ALJ found that the claimant could stand for two hours and walk for two hours out of an eight-hour work day. Muma directs the Court to the following portion of that decision:

> On the other hand, Plaintiff's inability to perform the most critical requirements for light work (walking and standing for around six hours a day) also suggests a significant reduction in the ability to perform light work as stated in the second instance. SSR 83-12, at *2. In this case, the light, unskilled occupational base is further eroded by the imposition of a sit/stand option allowing standing of no more than 45 minutes at a time or walking for 20 (Tr. 16). "Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12 at *4 ("most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task").

*Id*. at * 10. Muma argues that *Cohoon* supports a finding that her RFC for light work was significantly reduced, rather than somewhere between sedentary and light:

> The facts are similar here. The ALJ found that Muma could only stand or walk for four hours in an eight hour workday, which is not much different from the four hours combined standing or walking from the RFC finding in *Cohoon*. The ALJ here also found that Muma must have the option to alternate between sitting and standing every 30 minutes, further eroding the light occupational base, as in Cohoon. Finally, ALJ Mattia explicitly included in his RFC a finding that Muma could sit for six hours out of an eight hour workday. Perhaps for this reason, the VE testified that she considered jobs that primarily allowed an individual to sit. For example, the VE testified that "there are some cashier positions that are basically seated, but allow an individual to stand when necessary" (ECF No. 7-2, PageID54). As to the other "light" jobs the VE cited, she testified that "I work with this every day, so I know which jobs are more at the lower level, where they are sitting down but, perhaps, handling more than a negligible amount of weight during the day, in which case they're light rather than sedentary" (*Id.*, PageID 55). The VE's testimony strongly points to a finding that Muma's RFC for light work was significantly reduced, rather than somewhere between sedentary and light, as she only identified jobs that were primarily seated. As a result, a finding of disability pursuant to SSR 83-12was justified.

(Pl.'s Br. at 14-15).

Second, Muma contends that "even if this Court finds that Muma's RFC finding actually

fell somewhere between 'sedentary' and 'light' work, remand" would still be appropriate due to the failure to explain the discrepancy between her standing limitations and her stated ability to frequently carry or lift ten pounds. (Pl.'s Br. at 15). Muma argues that the "VE's testimony in this case is insufficient to show that Muma could perform a substantial number of jobs at the light exertional level" because "the ALJ did not seek an explanation for how an individual would be able to lift or carry 10 pounds frequently" despite "being *unable* to frequently stand." (Pl.'s Br. at 15) (emphasis in original).

In support of this aspect of her challenge, Plaintiff notes that "SSR 83-10 1983 WL 31251 *5-6 states that frequent lifting or carrying requires an individual to be on their feet for up to two thirds of the day, or approximately six hours." (Pl.'s Br. at 15). Muma asserts that "[s]ince 'frequent' is defined as between one third and two thirds of the workday, an inability to stand or walk for up to two thirds of the workday would also necessarily mean that a person would be unable to lift for that amount of time as well, according to SSR 83-10. Therefore, the ALJ's finding that Muma would only stand or walk for four hours is incompatible with a finding that she could frequently lift or carry 10 pounds." (Pl.'s Br. at 16). Plaintiff contends that, as a result, remand is warranted.

Plaintiff contends that *Wilkerson v. Comm'r of Soc. Sec.*, 278 F. Supp.3d 956, 970 (E.D. Mich. 2017) supports this aspect of her argument – that remand is appropriate because the ALJ did not expressly address any corresponding lifting limitations due to the claimant's standing limitations. (Pl.'s Br. at 16). Muma asserts that the "ALJ's reliance on VE testimony here was insufficient given that neither the ALJ, nor the VE, explained how Muma could perform frequent lifting or carrying of up to 10 pounds if she could not also stand frequently." (Pl.'s Br. at 16-17).

13

Muma contends that "[r]emand is required for a finding of disability under the Medical-Vocational Guidelines at the sedentary exertional level, or alternatively, for additional VE testimony explaining the discrepancy between Muma's standing and walking limitations, and the finding that Mum could frequently carry and lift." (*Id*. at 17).

In response to Muma's motion, and in support of his own motion, the Commissioner asserts that its decision correctly relied on VE testimony because Muma's RFC fell between the light and sedentary exertional levels making application of the medical-vocational rules inappropriate. The Commissioner states it recognized that the abilities stated in the RFC did not allow for the performance of the full range of light work. "To assess the degree to which those limitations eroded the unskilled light occupational base, the Commissioner relied on the VE who testified that an individual matching Plaintiff's vocational characteristics and RFC would be capable of performing" unskilled light positions such as cashier, administrative support clerk, and sorter. (Def.'s Br. at 13). The Commissioner asserts that when a claimant's exertional level falls between two medical-vocational rules which direct opposite conclusions, more difficult judgments are required. (*Id*. at 13-14). He asserts that, as the Sixth Circuit explained in *Blackburn*, "a claimant who 'can work on her feet for four hours a day, [ ] falls in the middle between the requirements for all sedentary work (two hours) and all light work (six hours). This is just what vocational experts are for." (Def.'s Br. at 16-17) (citing *Blackburn v. Comm'r of Soc. Sec*., 748 F. A'ppx 45 (6th Cir. 2018)). He contends "the Commissioner here found Plaintiff capable of working on her feet for four hours each day" and "appropriately relied on vocational expert testimony since Plaintiff's RFC placed her between the requirements of light and sedentary work." (*Id*. at 17).

The Commissioner further asserts that Muma's reliance on *Cohoon* is misplaced because it misinterpreted the holding of *Wilkerson*,[2] and ignores the Sixth Circuit's guidance from *Blackburn*.

In her Reply, Muma notes that the Commissioner did not respond to her argument that the Commissioner erred by adding corresponding lifting limitations to the RFC finding, in light of her inability to stand up to six hours in an eight-hour day. (*See* Pl.'s Reply at 2-3). Muma asserts that "even if this Court finds that her capacity for light work was not so significantly reduced as to warrant a disability finding under the Medical-Vocational Rules, the VE's testimony in this case was nevertheless insufficient to show that Muma could perform a substantial number of jobs at the light exertional level. This is because the ALJ asked the VE to consider a person who could lift or carry 10 pounds frequently, yet who could also only stand or walk for four hours out of an eight hour day. (*Id*.). As explained in Muma's motion, this leave an approximately two hour discrepancy between the amount of time Muma would need to be on her feet to perform the lifting and carrying requirements of light work, and the amount of time the ALJ actually found Muma could be on her feet. (*Id*.). The ALJ did not seek any explanation from the VE for this discrepancy, and Defendant failed to address this error. Thus, remand on this issue is appropriate." (*Id*).

Having considered the parties' respective arguments, and the Commissioner's failure to address the second aspect of Muma's assertion of error, the Court concludes that remand is warranted. Even if Muma's RFC finding actually falls somewhere between sedentary and light work, remand is still warranted because of the failure to explain the discrepancy between her

---

[2]*Wilkerson v. Comm'r of Soc. Sec.*, 278 F. Supp.3d 956 (E.D. Mich. 2017).

15

standing limitations and her stated ability to frequently carry or lift ten pounds. That is because the Commissioner's finding that Muma could only stand or walk for four hours appears incompatible with a finding that she could frequently lift or carry ten pounds. The Court agrees that the VE's testimony was insufficient to show that Muma could perform a substantial number of jobs at the light exertional level because no explanation was provided as to how an individual would be able to carry or lift ten pounds frequently despite being unable to walk or stand frequently.

In the absence of such consideration, the Commissioner's decision "fails to provide an accurate and logical bridge between the evidence and the result." *Wilkerson, supra* (quoting *Gross v. Comm'r of Soc. Sec*. 247 F.Supp.3d 824, 829 (E.D. Mich. 2017)). Thus, the Court concludes that remand is required for additional VE testimony explaining the discrepancy between Muma's standing and walking limitations and the finding that she could frequently carry and lift ten pounds.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that: 1) Plaintiff's summary judgment motion is GRANTED to the extent that remand is required; 2) the Commissioner's summary judgment motion is DENIED and the finding of the Commissioner is REVERSED; and 3) this matter is REMANDED for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 28, 2020